IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RALPH E. ACKER, WILMA J. ACKER,
and EVERSEAL GASKET, INC.,

        Plaintiffs,

  vs.                                            Case No. 00-2487-JWL

BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

        Defendant.

---

## MEMORANDUM AND ORDER

Plaintiffs Ralph E. and Wilma J. Acker and Everseal Gasket, Inc. brought this negligence action alleging that defendant Burlington Northern and Santa Fe Railway Company caused flooding in their gasket manufacturing plant when defendant left several cars of one of its trains on the tracks adjacent to a watercourse during a torrential rainstorm. According to plaintiffs, defendant's actions resulted in a dam effect, backing up water into their plant.

In January 2005, the Honorable G. Thomas VanBebber held a trial in the case, and the jury returned a verdict for defendant.[1] Specifically, the jury found that no party was at fault. The case is now before the court on plaintiffs' motion for judgment as a matter of law and/or for a new trial (Doc. 307). The court has carefully reviewed the transcript and the record, and, for the following reasons, denies the motion.

---

[1] The case was transferred to the undersigned judge after the death of Judge VanBebber.

## **I.  Standards of Review**

### A.  Motion for Judgment as a Matter of Law

Judgment as a matter of law under Rule 50(b) "should be cautiously and sparingly granted," Black v. M & W Gear Co., 269 F.3d 1220, 1238 (10th Cir. 2001), and is appropriate only if the evidence, viewed in the light most favorable to the nonmoving party, "points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion," Sanjuan v. IBP, Inc., 275 F.3d 1290, 1293 (10th Cir. 2002).  In determining whether judgment as a matter of law is proper, the court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury.  Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1241 (10th Cir. 2001).  In essence, the court must affirm the jury verdict if, viewing the record in the light most favorable to the nonmoving party, it contains evidence upon which the jury could have properly returned a verdict for the nonmoving party.  Roberts v. Progressive Independence, Inc., 183 F.3d 1215, 1219-20 (10th Cir. 1999) (citing Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir. 1996)).  Conversely, the court must enter judgment as a matter of law in favor of the moving party if "there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law."  Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1268 (10th Cir. 2000) (quoting Harolds, 82 F.3d at 1546-47).

### B.  Motion for New Trial

A motion for a new trial made on the ground that the jury's verdict is against the weight of the evidence is committed to the sound discretion of the trial court.  Veile v. Martinson, 258 F.3d 1180, 1188 (10th Cir. 2001) (citing Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1125 (10th Cir. 1995)).  The evidence is viewed in the light most favorable to the non-moving party.  Macsenti v. Becker, 237 F.3d 1223, 1235 (10th Cir.

2001). The "inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." Veile, 258 F.3d at 1188 (citing Getter, 66 F.3d at 1125). In assessing the propriety of granting a new trial, the court must bear in mind that "determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact" are functions within the sole province of the jury. Id. at 1190-91 (quoting Thunder Basin Coal Co. v. S.W. Pub. Serv. Co., 104 F.3d 1205, 1212 (10th Cir. 1997). When a party moves for a new trial based upon errors of law, that party must show not only that error occurred, but that the error affected the substantial rights of the parties. Pac. Employers Ins. Co. v. P.B. Hoidale Co., 804 F. Supp. 137, 141 (D. Kan. 1992); Fed. R. Civ. P. 61.

## **II. Discussion**

### A. Motion for Judgment as a Matter of Law

At the close of evidence, plaintiffs filed a Rule 50(a) motion alleging that "[t]he record is devoid of evidence upon which any jury could find that [] defendant's train did not increase plaintiffs' damages." Plaintiffs now renew that motion, claiming that the evidence is undisputed that the train caused greater quantities of water to be cast on plaintiffs' property than would have occurred in the train's absence. Plaintiffs acknowledge that the level of increased flooding is disputed, but maintain that the amount of increased water level is irrelevant – according to plaintiffs, the only relevant fact is that *some* additional flooding occurred as a result of defendant's train being on the tracks. The court disagrees.

Plaintiffs' expert, Dr. Charles Morris, testified at trial that without the train on the tracks, the flood height

would have reached 805.8 feet.[2]  During cross-examination, he acknowledged that the actual high water mark measured by the Army Corps of Engineers at the same location near the railroad tracks was 807.4 feet.  Based on this evidence, the jury could have logically concluded that the impact of the stranded train was negligible.

The court makes another observation.  Upon reviewing the record, the court notes an apparent lack of evidence showing the impact the higher water level caused by the train had on plaintiffs' damages – in other words, evidence showing what percentage of plaintiffs' equipment and materials would have been spared had the train not been stranded.  To properly establish causation, plaintiffs must show not only that the train caused additional flooding, but that the additional flooding made a difference.  Evidence that the stranded train caused higher water marks is insignificant in the absence of evidence that "but, for" the higher marks, plaintiffs would not have suffered as much or any damage.  Certainly on this issue, plaintiffs' motion for judgment as a matter of law cannot be granted.

### B.  Motion for New Trial

Plaintiffs make three arguments in support of their motion for a new trial: (1) the court should have instructed the jury on Kansas water law; (2) jury instruction number 20 was erroneous; and (3) the jury's finding of negligence was contrary to the evidence.

---

[2]  The court notes that plaintiffs, in their reply brief, argue that the trial court should have excluded the testimony of Dr. Alfred Parr, defendant's expert.  It is unclear whether they contend that a new trial is warranted because the trial court allowed Dr. Parr to testify.  Plaintiffs did not raise this issue as a basis for a new trial in their original memorandum in support of their motion, although they did generally comment that Dr. Parr used invalid flood heights.  The court will not consider the argument.  See Minshall v. McGraw Hill Broad. Co., 323 F.3d 1273, 1288 (10th Cir. 2003) (argument raised for the first time in reply brief is waived); Coleman v. B-G Maint. Mgmt., 108 F.3d 1199, 1205 (10th Cir. 1997) (issues not raised in the opening brief are deemed abandoned or waived).

### 1. Kansas Water Law Instruction

Plaintiffs' first argument is not a model of clarity. In their motion, they seem to argue that the trial court should not have instructed the jury on the issue of negligence. But in their reply, plaintiffs state that they "have never claimed nor will they claim that they should not be required to prove negligence at trial. At issue is what exactly constitutes the negligent act." Despite these seemingly conflicting positions, the court will attempt to summarize plaintiffs' arguments.

Plaintiffs submit that the "long held principles of Kansas water law . . . obviate the need for determining the negligence of [d]efendant in operating its train on October 4, 1998." Plaintiffs then discuss what is essentially a theory of strict liability, stating that "Kansas law expressly provides that if a property owner diverts water onto another property owner's land, he or she will be liable for damages resulting from that diversion." They maintain that the negligent act is not the operation of the train, but the diversion of water. In support of the theory, plaintiffs cite several cases holding that railroads, in constructing roads and bridges, must not obstruct the flow of a watercourse. See. e.g., Stafos v. Mo. Pac. R.R. Co., 367 F.2d 314 (10th Cir. 1966); The Union Trust Co. of N.Y. v. Cuppy, 26 Kan. 754 (1882).

Plaintiffs' argument is not well-taken for several reasons. First, plaintiffs tendered a proposed jury instruction outlining their claims. Nowhere in that instruction is a claim that defendant was negligent merely because it cast water on plaintiffs' property. To the contrary, plaintiffs proposed an instruction which alleged:

> Plaintiffs claim that BNSF was negligent in:
> Operating their train on 10/4/98 beyond the 19th St. Yard
> Allowing the train to operate on 10/4/98
> Failing to stop the train prior to reaching plaintiffs' property
> Failing to properly advise the crew as to weather information on 10/4/98
> Operating a train despite knowledge of washouts in the area.

5

Second, plaintiffs also tendered a proposed instruction defining negligence and a proposed verdict form which did not reflect plaintiffs' "water law" theory of negligence. On the other hand, however, plaintiffs did submit a trial brief that included a section on "water law," and objected to the court's claims instruction (which, notably, was modeled on the one submitted by plaintiffs). In objecting to the court's claims instruction, plaintiffs' counsel stated, "And water law, application of water law seems to be a little bit different than just strict negligence principles. When you have water cast upon someone else's property, that's what the negligence is. It's not how the train got there. . . . I don't believe that's a strict liability issue. Because what it is saying is if the train didn't cast any water upon their property, there would be no liability."

The court concludes that plaintiffs failed to properly preserve any argument that the jury should have been instructed on "Kansas water law." But even if they did, the court rejects plaintiffs' theory. The key case plaintiffs cite, Stafos, does not support plaintiffs' position. As plaintiffs point out, the Stafos court stated, "The only question for decision here then is whether the evidence was sufficient to support the trial court's finding that the obstruction in the railroad bridge resulted in the impoundment of a sufficient quantity of water to constitute a concurrent contributing cause of the overflow and consequent damage to appellee's leased lands and crops." 367 F.2d at 318. While the court's statement, viewed in isolation, appears to support plaintiffs' proposition – that the casting of water itself is the negligent act, and that only causation need be shown – a closer reading of the case reveals otherwise. The negligent act itself was not addressed because the act was not at issue on appeal. In fact, the Stafos court made numerous references to the fact that the district court had previously found that the defendant negligently maintained the bridge. See, e.g., id. at 315 ("[T]he railroad company appeals from a judgment . . . in favor of the []farmer for crop damages . . . due to the overflow of impounded waters proximately caused by the negligent maintenance of the railroad's bridge, ditch and

6

roadbed."); id. at 315-16 ("The specific claim sustained by the trial court is that the railroad negligently permitted silt and debris to collect in its bridge and ditch forming a dam causing flood waters to leave the ravine and become impounded. . . ."); id. at 317 ("On these findings the court concluded that the railroad was guilty of negligence proximately causing appellee's damages by failure to keep and maintain its bridge, ditch and roadbed so as to provide for the free flow of water. . . ."). Moreover, Stafos, as well as all of the other cases plaintiffs cite, dealt with a permanent structure. See id.; Johnson v. Bd. of County Comm'rs of Pratt County, 913 P.2d 119, 125 (Kan. 1996) (bridge); Siegel v. Singer, 1985 Kan. App. LEXIS 843, at *2-4 (Kan. App. June 20, 1985) (fence); Cuppy, 26 Kan. at 754 (culverts). The railroad cars at issue here were only left temporarily on the tracks because they were stranded in floodwater. The cases cited by plaintiffs are distinguishable on this basis, as well.

The court finds that the jury was appropriately instructed on negligence, the theory plaintiffs themselves chose to pursue at trial.

### 2. Jury Instruction Number 20

Plaintiffs next argue that the jury was improperly instructed that it could not consider the effect the train had on the track's ability to wash out, as it did in every other significant flood. Plaintiffs theorize that the train's weight prevented the track from washing out, causing additional flooding on their property. Jury instruction number 20 provides:

> During the course of trial, you heard evidence suggesting that Defendant's railroad bridge and right-of-way may have played a role in contributing to flooding in the area. The effect of the bridge and location of the right-of-way on any flooding should only be considered by you in determining whether Defendant was negligent in the operation and stranding of its train.

Defendant requested this instruction to comport with Magistrate Judge Waxse's May 22, 2003 order, which

denied plaintiffs' motion for leave to amend their pleadings to add claims that defendant was liable for installing or improperly maintaining the railroad bridge and right-of-way.

Rule 51 of the Federal Rules of Civil Procedure states that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The purpose of the specificity requirement is to give the district court an opportunity to correct any mistake before the jury enters its deliberations. See Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 553 (10th Cir. 1999); Weir v. Fed. Ins. Co., 811 F.2d 1387, 1390 (10th Cir. 1987). Accordingly, "the grounds stated in [an] objection must be obvious, plain, or unmistakable." Medlock, 164 F.3d at 553 (quoting Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1514 (10th Cir. 1984)). An objection is adequate to preserve the issue if it "identified the objectionable instruction and denoted the legal grounds for the objection." Weir, 811 F.2d at 1390 (quoting Taylor v. Denver and Rio Grande W. R.R. Co., 438 F.2d 351, 353 (10th Cir. 1971)).

At trial, plaintiffs' counsel objected to instruction number 20 (which was then instruction number 23). The court redrafted the instruction, and asked plaintiffs' counsel if he approved of the revised instruction. Plaintiffs' counsel replied, "Better. I'd rather not have it at all, but it's better than what it was, that's for sure." The court questions whether plaintiffs' counsel's statement was an "obvious, plain, or unmistakable" objection. See Medlock, 164 F.3d at 553. But even if it was, the court finds that the instruction was proper.

According to Magistrate Judge Waxse's prior ruling, which plaintiffs did not ask the district court to review, plaintiffs were time-barred from asserting any theory that the bridge or right-of-way caused their damages. During the instruction conference, plaintiffs' counsel acknowledged as much: "I understand that the railroad bridge and the right-of-way, you know, don't play a role. . . ." Testimony was presented at trial about

the bridge and right-of-way and their impact on the flooding, and a limiting instruction was necessary to instruct the jury about the scope of the claims they were to consider. The court finds no error in the instruction.

### 3. Negligence Finding Contrary to the Evidence

Finally, plaintiffs claim that the jury's verdict is against the great weight of the evidence presented at trial on the issue of fault. The court has reviewed the transcript of the trial, and finds that defendant presented sufficient evidence to support the jury's finding that no party was at fault. Defendant presented evidence that the October 4, 1998 flood was the "flood of record" for the Turkey Creek corridor. In approximately one hour, more than five inches of rain fell in the Kansas City metropolitan area. The jury heard the dispatch tape and crew members' testimony as to their observations, conduct, and perceptions of the events of October 4. Based on this evidence, the jury could have found that crew members reacted in a reasonable, non-negligent manner to the events of the evening. Viewing the evidence in the light most favorable to defendant, the verdict was not "clearly, decidedly or overwhelmingly against the weight of the evidence." See Veile, 258 F.3d at 1188 (citing Getter, 66 F.3d at 1125).

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiffs' motion for judgment as a matter of law and/or for a new trial (Doc. 307) is denied.

**IT IS SO ORDERED** this 22nd day of September, 2005.

                                            s/ John W. Lungstrum
                                            John W. Lungstrum
                                            United States District Judge